# In the United States Court of Federal Claims

No. 12-85
Filed: October 31, 2013

*************************************

|  |  |
|---|---|
| ADVANCED AEROSPACE TECHNOLOGIES, Inc., | * Ripeness; <br> * Standing; <br> * 28 U.S.C. § 1498(a) (waiver of sovereign immunity and jurisdiction re: certain patent infringement claims); |
| Plaintiff, | * 28 U.S.C. § 1498(c) (patent claims arising abroad); |
| v. | * 28 U.S.C. § 1631 (transfer to cure want of jurisdiction); |
| THE UNITED STATES, | * 35 U.S.C. § 154(a)(1) (content and term of a patent); |
| Defendant, | * 35 U.S.C. § 271(a) (liability for patent infringement as to the use, an offer to sell, or sales within the United States and imports thereto); |
| and | |
| THE BOEING COMPANY, | * 35 U.S.C. § 271(b) (inducing patent infringement); |
| and | * 35 U.S.C. § 271(c) (contributory infringement); |
| INSITU, Inc., | * 35 U.S.C. § 271(f) (infringement for exporting components of patented invention); |
| Third-Party Defendants. | * RCFC 7.1 (Disclosure Statement); <br> * RCFC 12(b)(1) (Motion to Dismiss). |

*************************************

**Craig S. King**, Arent Fox LLP, Washington, D.C., Counsel for Plaintiff.

**Benjamin Speake Richards**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Scott Michael McCaleb**, Wiley Rein, LLP, Washington, D.C., Counsel for Third-Party Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING THE SCOPE OF
SOVEREIGN IMMUNITY FOR PATENT INFRINGEMENT
UNDER 28 U.S.C. § 1498(a).**

**Braden,** *Judge*.

In *Zoltek Corp. v. United States*, 672 F.3d 1309 (2012) (*en banc*) ("*Zoltek V*"), the United States Court of Appeals for the Federal Circuit *sua sponte* revisited an earlier panel decision and held that 28 U.S.C. § 1498(a):

> [C]reates an independent cause of action for direct infringement by the Government or its contractors that is not dependent on 35 U.S.C. § 271(a). Direct infringement under § 1498(a) comes within the scope of the right to exclude granted in 35 U.S.C. § 154(a)(1). Thus, under § 1498(a)[,] the Government has waived its sovereign immunity for direct infringement, which extends[,] not only to acts previously recognized as being defined by § 271(a)[,] but also acts covered under § 271(g) due to unlawful use or manufacture . . . . [As such,] when the product of a patented process is used in, or imported into, the United States by or for the United States, there is direct infringement for the purposes of a § 1498[(a)] action.

*Id.* at 1326–27.[1]

---

[1] On March 25, 1996, Zoltek Corp. ("Zoltek") filed a complaint in the United States Court of Federal Claims, pursuant to 28 U.S.C. § 1498(a), alleging that the carbon fiber products used in a fighter jet designed and built by Lockheed Martin Corporation ("Lockheed") under a government contract infringed Zoltek's patent. In 2002, the United States Court of Federal Claims held that "section 1498 does not apply to all forms of direct [patent] infringement as currently defined in 35 U.S.C. § 271." *Zoltek Corp. v. United States*, 51 Fed. Cl. 829, 837 (2002) ("*Zoltek I*").

In 2003, the United States Court of Federal Claims granted Zoltek leave to amend its complaint to allege a Fifth Amendment claim, and identify the source of patent rights allegedly taken by the Government. *See Zoltek Corp. v. United States*, 58 Fed. Cl. 688 (2003) ("*Zoltek II*"). Both Zoltek and the Government appealed. In a *per curiam* opinion, the United States Court of Appeals for the Federal Circuit affirmed the trial court's determination that Zoltek's patent claim was precluded by § 1498(a), but reversed the trial court's determination that Zoltek could allege patent infringement as a Fifth Amendment takings claim. *See Zoltek Corp. v. United States*, 442 F.3d 1345 (Fed. Cir. 2006) ("*Zoltek III*").

On remand, the United States Court of Federal Claims granted Zoltek leave to further amend and assert a claim against Lockheed and transferred that claim to the United States District Court for the Northern District of Georgia. *See Zoltek Corp. v. United States*, 85 Fed. Cl. 409, 413–18 (2009) ("*Zoltek IV*"). The court, however, rejected the Government's argument that the Northern District of Georgia did not have subject matter jurisdiction, because the contractor was immune under § 1498(a), thereby precluding transfer under 28 U.S.C. § 1631. *Id.* at 418–19.

Our appellate court, however, did not "decide the issue of indirect infringement, under § 271(b), (c), and (f)." *Id.* at 1327. According to The Boeing Company ("Boeing"), that issue is presented in this case. The court disagrees.

## I. RELEVANT FACTS.[2]

Sometime in 1997, William Randall McDonnell, "a member of the McDonnell family of aviation pioneers who founded McDonnell Aircraft," "conducted research directed to effective launch and recovery of unmanned aerial vehicles ("UAVs")" using a hook arrangement on a UAV's wing to capture a vertical arrestment line.[3] Am. Compl. ¶¶ 2, 3, 20. In October 1997, Mr. McDonnell's UAV-retrieval system was tested successfully. Am. Compl. ¶ 21. In March 1999, a modified version of this retrieval system, using a single vertical arrestment line, also was tested successfully. Am. Compl. ¶ 22.

In July 1999, Mr. McDonnell filed a U.S. patent application for the above described UAV-retrieval system that resulted in the issuance of three patents: U.S. Patent Nos. 6,874,729 ("the '729 patent"); 7,097,137 ("the '137 patent"); and 8,167,242 ("the '242 patent"). Am. Compl. ¶ 25. Each patent had the title: "Launch and Recovery System for Unmanned Arial Vehicles." Am. Compl. at 1. The invention described in these patents "solved a key technical challenge in the successful deployment of UAVs without use of runways." Am. Compl. ¶ 23. Although other runway-free retrieval devices were known at that time, such as nets, there was no system that "reliably captured the UAV without damage." Am. Compl. ¶ 23. Subsequently, Mr. McDonnell assigned all "rights, title, and interest" in these patents to Advanced Aerospace Technologies, Inc. ("AATI" or "Plaintiff"), of which Mr. McDonnell is the President and sole owner. Am. Compl. ¶¶ 2, 5.

Insitu, Inc. ("Insitu") is a corporation "in the business of making . . . UAVs and guidance, launch and retrieval systems" in Bingen, Washington. Am. Compl. ¶ 14. In 1999, after learning that a predecessor entity to Insitu was "encountering difficulties in reliably retrieving [its] straight wing UAV" and after entering into a nondisclosure agreement with AATI, Mr. McDonnell suggested to Insitu's founder and Chief Technology Officer that Insitu switch to a

---

Subsequently, the United States Court of Federal Claims also certified a question as to "whether 28. U.S.C. § 1498(c) must be construed to nullify any government contractor immunity provided in § 1498(a) when a patent infringement claim aris[es] in a foreign country." *Zoltek Corp. v. United States* (No. 96-cv-166), Dkt. No. 385 (May 14, 2009) ("Certified Order"). Rather than addressing that question, the United States Court of Appeals for the Federal Circuit *en banc* and *sua sponte* "re-examine[d] the premises on which [its] earlier opinion in *Zoltek III* was based, and reconsider[ed] the consequences of that opinion." *Zoltek V*, 672 F.3d at 1314.

[2] The relevant facts recited herein were derived from the First Supplemental Complaint, filed on May 10, 2012 ("Am. Compl.").

[3] A vertical arrestment line has "an inherent capability of absorbing the UAV's kinetic energy, thus decelerating the UAV undamaged." Am. Compl. ¶ 20.

3

swept[4] shaped wing, instead of the straight wing that was being used. Am. Compl. ¶ 26. In late 2000, Mr. McDonnell learned that Insitu "was still encountering difficulties with their hook engaging the recovery line that were so significant that they threatened the continued viability of the company." Am. Compl. ¶ 27. "In response, Mr. McDonnell sent Insitu a copy of his then-pending patent application which disclosed the use of a special hook design for catching UAVs." Am. Compl. ¶ 27. After reviewing Mr. McDonnell's patent application Insitu "modified its own design to include a two part capture mechanism, and filed its own patent application for a two-part hook design, which resulted in Insitu's U.S. Patent No. 7,059,564 ("the '564 patent")." Am. Compl. ¶ 27. In sum, Insitu did not reference the '729 patent, '137 patent, or the '242 patent as prior art, but instead cited the application as a "foreign reference," without attribution to Mr. McDonnell or AATI, even after these patents issued, and miscited the published application. Am. Compl. ¶ 29. Insitu, however, proceeded to infringe AATI's patents "in willful disregard for AATI's legal rights." Am. Compl. ¶ 33. And, Insitu "improperly induced" AATI to delay the enforcement of the '137 patent, '242 patent, and '729 patent in 2008 for a 120 day period, during which time Insitu was acquired by Boeing.[5] Am. Compl. ¶ 36. Nevertheless, AATI advised Boeing in writing of Insitu's infringement prior to Boeing's acquisition of Insitu. Am. Compl. ¶ 37.

In addition, the Amended Complaint alleges that Boeing and its subsidiary Insitu are parties to contracts with the United States ("Government") to provide "intelligence gathering, surveillance, and reconnaissance . . . services[,] which included no hardware deliveries of [unmanned aircraft systems] and no Government specifications or instructions *requiring* infringement of the AATI patents." Am. Compl. ¶ 9 (emphasis added). At least six types of Insitu UAVs, *i.e.*, the Scan Eagle,[6] Night Eagle, Insight, GeoRanger, ScanEagle Compressed Carriage, and Integrator, are alleged to infringe AATI's patents by using the Skyhook feature. Am. Compl. ¶ 14. AATI estimates, based on public sources, that Boeing's annual revenues derived from the sales of AATI's patented technology exceed $400 million. Am. Compl. ¶ 38.

## II. PROCEDURAL HISTORY.

On February 8, 2012, AATI filed a complaint in the United States Court of Federal Claims, alleging that the Government infringed the '729 and '137 patents, that subsequently was amended on May 10, 2012 as a First Supplemental Complaint ("Am. Compl.").[7] The Amended

---

[4] "Swept" means not straight. Am. Compl. ¶ 4.

[5] The court will herein refer to third-party defendants, Boeing and Insitu, collectively as "Boeing."

[6] In 2002, Boeing "entered into a partnership with Insitu to market and further develop" UAV retrieval and launching systems that "matured into the ScanEagle UAV." Am. Compl. ¶ 31.

[7] On February 9, 2012, AATI filed a complaint for willful patent infringement in the United States District Court for the Eastern District of Missouri, pursuant to 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271, that was assigned to the Honorable Rodney W. Sippel. That complaint included six counts: Count I alleged direct infringement of U.S. Patent No. 6,874,729

4

Complaint included six counts.  Count I alleged that Insitu and Boeing's use or manufacture of UAVs infringed the '729 patent, "with the [a]uthorization and [c]onsent of the United States."  Am. Compl. ¶¶ 39–49.

Count II alleged that Insitu and Boeing used or manufactured UAVs that infringed the '137 patent "with the [a]uthorization and [c]onsent of the United States."  Am. Compl. ¶¶ 50–60.

Count III alleged that Insitu and Boeing used or manufactured UAVs that infringed the '242 patent "with the [a]uthorization and [c]onsent of the United States."  Am. Compl. ¶¶ 61–70.

Count IV alleged that the Government "has been" and "now is using or manufacturing, without license of AATI or lawful right to use or manufacture, the invention described in and covered by the '729 patent, by using or manufacturing Insitu UA[V]s, and all like systems and services."  Am. Compl. ¶¶ 72–75.

Count V alleged that the Government "has been" and "now is using or manufacturing, without license of AATI or lawful right to use or manufacture, the invention described in and covered by the '137 patent, by using or manufacturing Insitu UA[V]s, and all like systems and services."  Am. Compl. ¶¶ 76–79.

Count VI alleged that the United States "has been" and "now is using or manufacturing, without license of AATI or lawful right to use or manufacture, the invention described in and covered by the '242 patent, by using or manufacturing Insitu UA[V]s, and all like systems and services."  Am. Compl. ¶¶ 80–83.

On April 6, 2012, the Government filed a Motion To Notify Interested Party Boeing.  The court granted that motion on April 23, 2012.  On April 27, 2012, that Notice was served on Boeing, in its corporate capacity and as the corporate entity that acquired Insitu in 2008.  On May 1, 2012, AATI filed an unopposed Motion To Supplement Pleadings.  On May 2, 2012, the court granted that motion.

On May 10, 2012, AATI filed a First Supplemental Complaint alleging, in addition to the four claims alleged in the February 8, 2012 Complaint, new claims regarding infringement of the '242 patent, because of the Government, Boeing, and Insitu's use or manufacture of certain of AATI's patented systems for and with the authorization and consent of the Government.  Am. Compl. ¶¶ 61–71, 80–83.  On June 8, 2012, the Government filed an Answer.  On June 11, 2012, Insitu and Boeing filed an Answer, and each company filed a Rule 7.1 Disclosure Statement.

---

by Insitu and Boeing; Count II alleged inducement of infringement of U.S. Patent No. 6,874,729 by Insitu; Count III alleged contributory infringement of U.S. Patent No. 6,874,729 by Insitu; Count IV alleged direct infringement of U.S. Patent No. 7,097,137 by Insitu and Boeing; Count V alleged inducement of infringement of U.S. Patent No. 7,097,137 by Insitu; and Count VI alleged contributory infringement of U.S. Patent No. 7,097,137 by Insitu.  Complaint, *Advanced Aerospace Techs., Inc. v. The Boeing Co., et al.* (No. 4:12-cv-226), Dkt. No. 1.

On July 30, 2012, the parties filed a Joint Preliminary Status Report and a Joint Motion For Protective Order. On August 1, 2012, the court issued a Protective Order. On August 8, 2012, the court issued a Scheduling Order. On September 20, 2012, the parties filed a Joint Motion For Protective Order Concerning E-Discovery. To date, the court has declined to rule on that Motion, as premature.

On October 15, 2012, Boeing filed a Motion To Dismiss, Pursuant to Rule 12(b)(1) ("T-PD Mot."). On October 17, 2012, the court held a telephone status conference, wherein the Government was asked to inform the court of its position on the jurisdictional issues presented by Boeing's October 15, 2012 Motion To Dismiss. On October 19, 2012, the parties entered a Stipulation regarding the contracts relevant to this action.

On November 16, 2012, AATI filed an Opposition To Boeing's October 15, 2012 Motion to Dismiss ("Pl. Opp."). On November 18, 2012, the Government filed a Motion For Leave To File a brief providing its "views" on the jurisdictional issue raised by Boeing's October 15, 2012 Motion to Dismiss ("Gov't Resp."). On December 3, 2012, Boeing filed a Reply ("T-PD Reply").

On May 22, 2013, the court convened an oral argument on Boeing's October 15, 2012 Motion To Dismiss (5/22/13 TR at 1–81). On June 12, 2013, the Government filed a Supplemental Brief ("Gov't Supp. Br."). On June 26, 2013, Boeing filed a Response ("T-DP Resp."). And, on June 26, 2013 AATI also filed a Response ("AATI Resp.").

### III. DISCUSSION.

#### A. Whether The Third-Party Defendants Have Standing To Seek An Adjudication Of The October 15, 2012 Motion To Dismiss.

AATI asserts that Boeing does not have standing to seek an adjudication of the October 15, 2012 Motion To Dismiss, because all claims alleged in the February 8, 2012 Complaint and the May 10, 2012 Supplemental Complaint are directed against the Government. Pl. Opp. at 19 (citing *United States v. Metro. St. Louis Sewer Dist.*, 952 F.2d 1040, 1043 (8th Cir. 1992) ("[A] party may assert a third party's rights only if, *inter alia*, the third party is unable to assert its own rights[.]")). *Metro. St. Louis Sewer*, however, is inapposite, as it concerned an intervenors' standing to raise a waivable affirmative defense, not to contest the court's jurisdiction. *Id.* More importantly, as the United States Court of Appeals for the Federal Circuit has held, "any party may challenge, or the court may raise *sua sponte*, subject matter jurisdiction at any time." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1346 (Fed. Cir. 2008); *see also* RCFC 14(a)(6)(C) (providing that the "third-party defendant . . . . may assert against the plaintiff any defense that the [Government] has to the plaintiff's claim").[8]

---

[8] RCFC 14(a) was abrogated, effective August 30, 2013. RCFC 14(a)(6)(C) was applicable and in force, however, both on June 11, 2012, the date that Insitu and Boeing filed an Answer as a third-party defendants, and on October 15, 2012, the date the pending Motion To Dismiss was filed.

For this reason, the court has determined that Boeing has standing to seek an adjudication of the October 15, 2012 Motion To Dismiss.

### B. Whether The Third-Party Defendants' October 15, 2012 Motion To Dismiss Is Ripe.

Next, AATI argues that adjudication of Boeing's October 15, 2012 Motion To Dismiss is premature, because the claims asserted in the May 10, 2012 Amended Complaint are dependent on discovery. Pl. Opp. at 3–5. AATI advises the court that, if there is "no authorization and consent in respect to contracts where AATI asserts [35 U.S.C.] § 271(f) infringement," the court will have no need to address jurisdiction because all such claims could be adjudicated in the "willful patent" case which is pending, but stayed, in the United States District Court for the Eastern District of Missouri. Pl. Opp. at 4.

Boeing responds that dismissal is not premature, because AATI "chose to assert indirect infringement claims under section 271(f)" in the February 8, 2012 Complaint and May 10, 2012 Amended Complaint so that the court "*must* assess whether jurisdiction exists." T-PD Reply at 1; *see also* T-PD Mot. at 11 (citing Am. Compl. at ¶¶ 43–44, 47–48, 54–55, 65-66, 69–70). As such, the October 15, 2012 Motion To Dismiss is ripe, as it raises a question of law and does not challenge any underlying factual allegations. T-PD Reply at 4 (citing *Nat'l Presto Indus., Inc. v. Dazey Corp.*, 107 F.3d 1576, 1580 (Fed. Cir. 1997) (holding that an appeal challenging a court's subject matter jurisdiction presents a question of law)). Contrary to AATI's assertion, there is no unresolved question of authorization and consent, because the Government has verified authorization and consent to the relevant contracts at issue. T-PD Reply at 5 (citing *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (Ct. Cl. 1976) (stating that "*post hoc* intervention of the Government in pending infringement litigation against individual contractors" establishes authorization and consent)).[9] Therefore, postponing a decision on Boeing's October 15, 2012 Motion To Dismiss would waste judicial resources and impose unnecessary discovery-related burdens on the parties. T-PD Reply at 5.

---

[9] Boeing submitted an October 12, 2012 letter from Benjamin S. Richards, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, to counsel for AATI to evidence the Government's authorization of and consent to the contracts at issue. T-PD Reply at 5 (citing T-PD Reply Ex. A). The court, however, declines to consider this letter. First, by appending the letter to a reply brief, Boeing afforded AATI no opportunity to respond. *See Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."). Second, "[o]n a motion to dismiss, the court generally may not consider materials outside the pleadings." *Am. Contractors Indem. Co. v. United States*, 570 F.3d 1373, 1376 (Fed. Cir. 2009); *cf. AstraZeneca Pharm. LP v. Apotex Corp.*, 669 F.3d 1370, 1378 n.5 (Fed. Cir. 2012) (affirming the trial court's decision, when evaluating a motion to dismiss, to review documents "integral to or explicitly relied upon in the complaint," without allowing the opposing party to conduct additional discovery (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997))).

AATI, however, does not cite a single authority, precedential or otherwise, in support of the argument that the court should defer ruling on the pending jurisdictional motion, because discovery might render the motion moot. In fact, AATI's argument conflicts with *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93–95 (1998), wherein the United States Supreme Court held that jurisdictional issues, even particularly difficult ones, must be decided as a threshold matter, even when a case may be resolved easily on the merits.

For these reasons, the court has determined that Boeing's October 15, 2012 Motion to Dismiss is ripe for the court's adjudication.

### C. Whether The Waiver Of Sovereign Immunity, Under 28 U.S.C. § 1498(a), Applies To The Types of Patent Infringement Prescribed In 35 U.S.C. § 271.

#### 1. The Third-Party Defendants' Argument.

First, Boeing argues that the United States Court of Appeals for the Federal Circuit "expressly connected the waiver of sovereign immunity [under § 1498(a)] to the scope of the patent grant under 35 U.S.C. § 154(a)(1)."[10] T-PD Mot. at 6 (citing *Zoltek V*, 672 F.3d at 1323). Because section 154(a)(1) of the Patent Act incorporates language that is parallel to that found in section 271(a) and (g), violations thereof are acts of direct infringement and included in the waiver of sovereign immunity in § 1498(a). T-PD Mot. at 6–7. Therefore, Boeing contends that *Zoltek V* "expressly left precedent regarding acts of *indirect* infringement undisturbed," because "the law is settled that the Government has not waived its sovereign immunity" for such claims. T-PD Mot. at 7 (citing *Zoltek V*, 672 F.3d at 1327); *see also id*. at 7 (quoting *Decca Ltd. v. United States*, 640 F.2d 1156, 1167 (Ct. Cl. 1980) (stating that "under section 1498, the Government has agreed to be sued only for its ***direct infringement*** of a patent . . . . Activities of the Government which fall short of direct infringement do not give rise to governmental liability, because the Government has not waived its sovereign immunity with respect to such activities.") (emphasis and bold in T-PD Mot.)). And, as *Decca* stated, the Government is "not liable for its inducing infringement by others, for its conduct contributory to infringement of others, or for what, but for section 1498, would be contributory (rather than direct) infringement of its suppliers." *Decca*, 640 F.2d at 1167. Therefore, *Zoltek V* and *Decca* require that the court grant Boeing's October 15, 2012 Motion to Dismiss. T-PD Mot. at 7.

Second, Boeing points out that section 154(a)(1) of the Patent Act[11] does not include any language describing the export of components of a patented invention, because that type of

---

[10] Section 154(a)(1) of the Patent Act affords a patentee only "the right to exclude others from making, using, offering for sale, or selling the invention into the United States[.]"  35 U.S.C. § 154(a)(1).

[11] Boeing adds that it is not unusual for sovereign immunity to bar patent infringement claims. T-PD Reply at 10 (stating that the United States Court of Appeals for the Federal Circuit has "routinely confirmed that the use of a patented invention by a governmental entity does not necessarily entitle the patent holder to the right to sue the government").

infringement is limited to section 271(f) of the Patent Act.[12]  T-PD Reply at 7.  For this reason, *Zoltek V* characterized section 271(f) as a statute prohibiting "indirect infringement."  T-PD Mot. at 8 (citing *Zoltek V*, 672 F.3d at 1327).

Third, Boeing asserts that *Zoltek V* stands for the proposition that § 1498(a) is applicable only to direct infringement, as described in certain sections of the Patent Act: when an entire patent combination is made, § 271(a); or, on the completion of a patented process, § 271(g).  T-PD Mot. at 8.  Therefore, § 1498(a) is not applicable to indirect infringement, described in section 271(f) of the Patent Act as where uncombined components of a patented combination are supplied or caused to be combined overseas "to actively induce" infringement.  T-PD Mot. at 8.  In addition, "language of intent" is included in section 271(f) of the Patent Act that parallels that of induced infringement under section 271(b).  T-PD Mot. at 8.  And, the text of section 271(f)(2) parallels that of "contributory infringement" under section 271(c).  T-PD Mot. at 8.

Therefore, Boeing reads *Zoltek V* to link the scope of § 1498(a) only to acts that "directly implicate the exclusive rights granted to a patentee" under section 154(a)(1).  T-PD Mot. at 9 (citing *Zoltek V*, 672 F.3d at 1326–27).  Since section 154(a)(1) of the Patent Act does not include "any exclusive rights corresponding to acts of infringement under [s]ection 271(f)," Boeing states that the "only reasonable conclusion is that conduct delineated in [section] 271(f) constitutes indirect infringement."  T-PD Mot. at 9.

Boeing reasons that the conclusion that there has been no waiver of sovereign immunity as to section 271(f) of the Patent Act is consistent with *Zoltek V's* conclusion that immunity was waived as to 35 U.S.C. § 271(g).  T-PD Mot. at 9.  This is so, because in "general a party is liable for infringement under [s]ection 271(g) [of the Patent Act] if the party imports a product made by a patented process—an act that directly implicates the exclusive rights granted to a

---

[12] Section 271(f) of the Patent Act provides:

> (1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
>
> (2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f).

patentee by [s]ection 154(a)(1) because Congress expanded the patent grant under [s]ection 154(a)(1) when it added [s]ection 271(g) to the Patent Act." T-PD Mot. at 9 (citing *Zoltek V*, 672 F.3d at 1323–25). But, when Congress added patent liability under section 271(f) of the Patent Act, the scope of the patent grant in section 154(a)(1) was not changed. T-PD Mot. at 9. Therefore, Boeing advises that Congress "intended different treatment for [s]ections 271(f) and (g)." T-PD Mot. at 9. Consequently, "well settled-principles of statutory interpretation mandate the conclusion that there has been no waiver of sovereign immunity for acts of infringement under [s]ection 271(f)." T-PD Mot. at 10. This result, according to Boeing, also "conforms to the general principle that a court must narrowly construe any waiver of the Government's sovereign immunity." T-PD Mot. at 10.

Finally, Boeing cites *Motorola, Inc. v. United States*, 729 F.2d 765, 768 (Fed. Cir. 1984) for the proposition that "[a]lthough a section 1498 action may be similar to a Title 35 action, it is nonetheless only parallel and not identical." T-PD Mot. at 11. Consequently, it is the prerogative of Congress to waive sovereign immunity and Congress "plainly has not done so for ***all*** conduct that may render a private party liable for patent infringement." T-PD Mot. at 11 (emphasis and bold in T-PD Mot.). Since Congress has not waived sovereign immunity for indirect infringement under section 271(f), the court should dismiss all of AATI's claims based on such conduct, *i.e.*, Amend. Compl. ¶¶ 43–44, 47–48, 54–55, 58–59, 65–66, 69–70. T-PD Mot. at 11–12.

Boeing's Response to the Government's Supplemental Brief simply indicates that Boeing "join[s] in the Government's arguments set for in the Supplemental Brief," reiterating several arguments made therein. T-PD Resp. at 1. Specifically, the Response, like the Government's Supplemental Brief, argues that claims of infringement under section 271(f) fail the "three-prong test . . . in [*Zoltek V*]," and thus remain outside the scope of the waiver of sovereign immunity under § 1498(a). T-PD Resp. at 2.

### 2. The Government's Argument.

Interestingly, as the primary defendant, the Government did not initiate or immediately join Boeing's October 15, 2012 jurisdictional motion, but waited for the court's invitation to provide its "views" on the scope of the congressional waiver of sovereign immunity under 28 U.S.C. § 1498(a). In a five-page initial submission, the Government simply concurred that the "United States has waived sovereign immunity only for claims of compensation based on its, or its contractor's, direct infringement of a United States patent." Gov't Resp. at 2, 3–4 (citing *Decca* and *Zoltek V*).

In response to the court's request at the May 22, 2013 oral argument, the Government filed a Supplemental Brief on June 12, 2013, requesting that the court dismiss the claims alleged in the Amended Complaint at ¶¶ 43–44, 47–48, 54–55, 58–59, 65–66, and 69–70, because they state claims under 35 U.S.C. § 271(f). Gov't Supp Br. at 1–2; *see also id*. at 3–16.

Seizing on AATI's contention that infringement under section 271(f) is a form of direct infringement (Pl. Opp. at 12), the Government contends that the "second prong of the *Zoltek [V]* analysis" precludes section 271(f) from being within the ambit of the Government's waiver of

sovereign immunity in § 1498(a). Gov't Supp. Br. at 4. *Zoltek V* held that the scope of the Government's waiver of immunity is determined by applying a three-prong analysis, and the second of those prongs provides that immunity is waived when an invention claimed in a U.S. patent "(2) is 'used or manufactured by or for the United States,' meaning each limitation is present in the accused product or process[.]" Gov't Supp. Br. at 4 (quoting *Zoltek V*, 672 F.3d at 1319). That requirement—that each limitation is present in the accused product or process—requires that the product or process accused of infringing "is complete." Gov't Supp. Br. at 6. Because infringement under sections 271(b), (c), and (f) is "preparatory to an infringement that has yet to be completed," infringement under those sections is implicitly excluded from the scope of the § 1498(a) waiver. Gov't Supp. Br. at 6.

### 3. The Plaintiff's Response.

AATI responds that the court has jurisdiction over AATI's claims as to Boeing's infringement, because of Government authorization and consent for the conduct described in the Amended Complaint. Pl. Opp. at 5–6, 16; *see also* Am. Compl. at 1–2. Therefore, section 271(f) imposes liability on the supplier of components to be used to assemble or manufacture an infringing product by an entity outside of the borders of the United States. Pl. Opp. at 6–7. In contrast to section 271(c) of the Patent Act, prohibiting contributing infringement, section 271(f) does not require a predicate act of direct infringement. Pl. Opp. at 7 (citing *Worldtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1317 (Fed. Cir. 2010) (holding that "indirect infringement must relate directly to . . . direct infringement.")). Therefore, because section 271(f) of the Patent Act does not require proof of direct infringement, section 271(f) infringement *ipso facto* "cannot be indirect infringement." Pl. Opp. at 7. AATI also adds that section 271(f) is a "twin to 35 U.S.C. § 271(g), since Congress enacted section 271(f) of the Patent Act to impose liability for patent infringement where components of an invention were made in the United States, but then exported for physical combination abroad. Pl. Opp. at 6 (citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 444–45 (2007) (explaining that "Congress specifically intended § 271(f) as a response to the Supreme Court's decision in *Deepsouth* [*Packing Co., Inc., v. Laitram Corp.*, 406 U.S. 518 (1972)]. . . . [so that § 271(f)] expands the definition of infringement to include supplying from the United States a patented invention's components" (internal citations omitted))).

In sum, section 271(g) was enacted to eliminate patent infringement accomplished by carrying out some or all of the steps of a patented process outside the United States and then importing the end product or offering to sell, selling, or using that product in the United States. Pl. Opp. at 7. In other words, section 271(g) of the Patent Act deals with imports and is the mirror opposite of section 271(f) that deals with exports. Pl. Opp. at 8. Both statutes "close loopholes and both address intended activity outside the patent jurisdiction of the United States that is not itself a violation of [section] 271(a)." Pl. Opp. at 8.

In addition, AATI contends that the aforementioned statutory construction is supported by *Zoltek V*, since "much of the rationale for deciding that [section] 271(g) is within [section] 1498(a) lends itself equally to the conclusion that [section] 271(f) is also within [section] 1498(a)." Pl. Opp. at 8. For this reason, sections 271(f) and (g) of the Patent Act prohibit infringement that, "had it been conducted in the United States, would be infringement under [section] 271(a)." Pl. Opp. at 9. As *Zoltek V* recognized, the "limitation of [section]

1498(a) to infringement under [section] 271(a) is inconsistent with the plain language of the statute[.]" Pl. Opp. at 9 (quoting *Zoltek V*, 672 F.3d at 1314–15).  Moreover, limiting the scope of sovereign immunity under section 1498(a) only to section 271(a) of the Patent Act "creates the possibility that the United States' procurement of important military matériel could be interrupted via infringement actions against government contractors—the exact result [section] 1498 was meant to avoid."  Pl. Opp. at 9 (quoting *Zoltek V*, 672 F.3d at 1314–15).  In other words, the Government needs to maintain the ability to authorize and consent to infringement under section 271(f) to avoid having necessary procurement interrupted by an infringement suit.  Pl. Opp. at 10.

Next, AATI addresses Boeing's argument that "(1) all acts of 'indirect infringement' are outside of § 1498 and (2) infringement under § 271(f) is 'indirect infringement' so that (3) § 271(f) is outside § 1498."  Pl. Opp. at 10.  AATI states that simply describing infringement under § 271(f) as "indirect infringement" does not address whether the acts described therein are subject to the scope of immunity under § 1498(a).  Pl. Opp. at 10.  And, as the United States Court of Appeals for the Federal Circuit explained, whether section 271(f) of the Patent Act is subject to the scope of sovereign immunity set forth in § 1498(a) was not at issue in *Zoltek V*.  Pl. Opp. at 10–11.

Then, AATI posits that there is no basis for "limiting § 1498 to acts that violate rights set forth in § 154," because neither the Government nor its contractors have a "license" or "lawful right" to use § 1498(a) to shield them against infringement, whether infringement occurs under section 271(f) of the Patent Act or section 271(g).  Pl. Opp. at 11–12.  In fact, section 271(f) of the Patent Act should not be labeled as "indirect infringement" for purposes of § 1498(a), since the United States Court of Appeals for the Federal Circuit has held that "indirect infringement" requires the establishment of a "concomitant act of direct infringement."  Pl. Opp. at 12 (citing *Worldtech*, 609 F.3d at 1317 (explaining that a "defendant's liability for indirect infringement must relate to . . . identified instances of direct infringement")); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) (articulating appellant's argument that "direct infringement [is] a necessary predicate for proving indirect infringement").  Therefore, infringement under section 271(f) of the Patent Act, as to acts occurring within the United States, is not indirect infringement, because it focuses on the act of supplying components in or from the United States for combination abroad, and does not require any separate act of direct infringement.  Pl. Opp. at 12 (citing 5 Donald S. Chisum, CHISUM ON PATENTS, § 16.02[7] (Matthew Bender) (including infringement under § 271(f) of the Patent Act in a section entitled "Direct Infringement")).  In fact, AATI asserts that infringement under section 271(f) is direct infringement that is "covered by the § 1498(a) waiver."  AATI Resp. at 1.

AATI also challenges Boeing's reliance on *Decca* for the proposition that indirect infringement is not subject to the scope of § 1498(a) immunity waiver.  Pl. Opp. at 13–14.  *Decca* was decided in 1980.  Pl. Opp. at 13.  Therefore, *Decca's* holding that § 1498(a) waives the Government's sovereign immunity for "direct infringement," applies only to sections 271(b) and (c) of the Patent Act, since section 271(f) was not enacted until 1984.  Pl. Opp. at 13.  To the extent that *Decca* still has vitality after *Zoltek V*, its holding is limited only to suppliers/manufacturers of components of a patented invention, where those components are not combined within the United States.  Pl. Opp. at 14.  In this case, however, there is no dispute that Boeing manufactured both UAVs and a rig for deploying the arrestment line within the United

States. Pl. Opp. at 14. And, there is no dispute that when both of these parts of the invention are manufactured, the invention "is complete and ready to use." Pl. Opp. at 14. Therefore, the only "combination" of the manufactured parts that occurs outside the United States is the "use" of the two parts; it is not "the manufacture of a permanent completed structure." Pl. Opp. at 14. Specifically, Boeing supplied both parts of the patented invention—the UAVs with the structure in question, and a rig for deploying the arrestment line—an action that constitutes the supply of "all components" referenced in section 271(f) of the Patent Act. Pl. Opp. at 14. Therefore, Boeing's supply of these components was direct infringement, because Boeing "made the invention within the meaning of [Section] 154." Pl. Opp. at 14. Although AATI's patented invention was "combin[ed]" overseas, in that two parts were used in conjunction with each other, the "entire manufacture" took place in the United States. Pl. Opp. at 15.

AATI concludes that the court does not need to decide "whether [section] 271(f) [of the Patent Act] describes a direct infringement in all circumstances, but only under the facts of this case," wherein "Boeing's manufacture of AATI's complete invention in the United States, for 'combination' only in terms of use overseas, is a direct infringement that falls within the plain meaning of § 1498(a)." Pl. Opp. at 15. In sum, as a matter of law, "[b]ecause [section] 271(g) [of the Patent Act] is within § 1498, [Section] 271(f) must be deemed to be within § 1498 as well." Pl. Opp. at 15.

AATI also asserts that both the Government and Boeing misapply the "*Zoltek V* statement that a use or manufacture means that each limitation must be present in the accused product of process." AATI Resp. at 10. *Zoltek V* found that each limitation of an asserted section 271(g) claim was present in the accused product or process by virtue of the importation, sale, or use in the United States of the product created by the patented process. Similarly, in the case of § 271(f) infringement, each limitation is present in the accused product or process, so as to constitute use or manufacture under § 1498(a), by the "supply of components in conjunction with the intent or understanding . . . that those components will be combined overseas[.]" AATI Resp. at 10. Thus, just as a section 271(g) infringement is a "use" under § 1498(a), so also is an infringement claim brought under § 271(f). AATI Resp. at 11.

### 4. The Court's Resolution.

Section 1498(a) is a congressional waiver of sovereign immunity and designation of the United States Court of Federal Claims as the exclusive forum for the adjudication of patent infringement claims against the Government:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a).

13

The United States Court of Appeals for the Federal Circuit *en banc* stated that: "Section 1498 makes no reference to direct infringement as it is defined in [35 U.S.C.] § 271(a). Indeed, so interpreting § 1498(a) is contrary to its plain language, interpreted in light of the meaning of that language in 1910." *Zoltek V*, 672 F.3d at 1319. Instead, our appellate court said that "§ 1498(a) comes within the scope of the right to exclude granted in 35 U.S.C. § 154(a)(1)." *Zoltek V*, 672 F.3d at 1326–27. Section 154(a)(1) of the Patent Act describes a patent as "the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States[.]" 35 U.S.C. § 154(a)(1). It is for this reason that our appellate court has held the Government waives sovereign immunity for claims alleging a violation of the rights protected by section 154(a)(1) of the Patent Act. *See Zoltek V*, 672 F.3d at 1326–27 (explaining that because "direct infringement under § 1498(a) comes within the scope of the right to exclude granted in 35 U.S.C. § 154(a)(1) . . . . the Government has waived its sovereign immunity"). Any act to deny a patent holder the benefit of that right is prohibited under § 1498(a), whether it be "direct" or "indirect."

In sum, all parties in this case misconstrue the scope of the waiver of sovereign immunity in § 1498(a), as the "plain language of § 1498(a) indicates that § *1498(a) operates independently from Title 35*." *Zoltek V*, 672 F.3d at 1321 (emphasis added); *see also id*. at 1326. Therefore, contrary to Boeing's argument, *Zoltek V* did not consider whether Congress waived sovereign immunity for so-called indirect infringement under 28 U.S.C. § 1498(a), not because the "law is settled," but because that issue was not presented in that case. *Compare* T-PD Mot. at 7 ("As for claims of indirect infringement, the law is settled that the Government has not waived its sovereign immunity."), *with Zoltek V*, 672 F.3d at 1327 ("We do not decide the issue of indirect infringement, under § 271(b), (c), and (f), *which is not before us*." (emphasis added)). Likewise, although Boeing argues that *Decca* prohibits the court from ruling that the waiver of sovereign immunity under 28 U.S.C. § 1498(a) extends to indirect infringement, the issue before the Court of Claims in that case did not concern liability, but "the quantum of recovery." *See Decca*, 640 F.2d at 1162. Therefore, that court's observation that the "[a]ctivities of the Government which fall short of direct infringement" are exempt from the scope of the immunity waiver under § 1498(a) is *dicta*. *Id*. at 1167.[13] And, contrary to AATI's argument, neither section 271(f) of the Patent Act, nor any other section thereof, is "within" § 1498(a). Pl. Opp at 8; *see also* Pl. Resp. at 8–9.

The text of § 1498(a) does not describe the type of patent infringement for which Congress has waived sovereign immunity by using the adjectives "direct" or "indirect." *See* 28 U.S.C. § 1498(a). What § 1498(a) does state is that sovereign immunity is waived where: an "invention described in and covered by a patent;" is "*us[ed] or manufacture[ed]*" by *or for the Government*; "without [a] license of the [patent] owner" or "lawful right" to do so. *Id*. (emphasis added). In the context of Section 1498(a), "use" of a patent means that "*each* limitation of the claims must be present in the accused product[.]" *Zoltek V*, 672 F.3d at 1318; *see also id*. at 1319.

---

[13] Moreover, the only case that *Decca* cited in support is in a footnote, *Leesona Corp. v. United States*, 599 F.2d 958, 962 (1979), *cert. denied*, 444 U.S. 991 (1979), a case that also concerned damages, not the waiver of sovereign immunity under § 1498(a). *See Decca*, 640 F.2d at 1167 n.15.

14

As to the '729, '137, and '242 patents in this case, the Amended Complaint alleges that the Government "has entered into certain contracts with Insitu and Boeing[,] pursuant to which those companies use or manufacture the invention described in and covered [by AATI's patents] *for the United States, with the authorization and consent of the United States for that use or manufacture*." Am. Compl. ¶ 49 (same re: '729 patent) (emphasis added); *see also id*. ¶ 60 (same re: '137 patent); *see also id*. ¶ 71 (same re: '242 patent). In addition, the Amended Complaint alleges that the Government "has been, and now is using or manufacturing, without license of AATI or lawful right to use or manufacture, the invention described in and covered by the '729 patent, by using or manufacturing Insitu UA[Vs], and all like systems and services." Am. Compl. ¶ 74; *see also id*. ¶ 77 (same re: '137 patent); *see also id*. ¶ 82 (same re: '242 patent).

As the United States Court of Appeals for the Federal Circuit has stated, to "use an invention, each limitation of the claims must be present in the accused product[.]" *Zoltek V*, 672 F.3d at 1318 (internal quotation omitted); *see also id*. at 1320 ("the language in § 1498(a) . . . is limited to inventions that are 'used or manufactured by or for the *United States*.'"). "Use," however, is not defined by *where* the alleged infringing conduct takes place, but by the *effect* of the conduct. The contracts at issue in this case authorized the act of infringement. That conduct arose in the United States[14] and is consistent with *Decca's* description of direct infringement as "*use or manufacture* . . . either through authorized actions of governmental employees or *through actions by contractors specifically authorized by the Government to engage in the actions for the Government*." 640 F.2d at 1167 n.15 (emphasis added). Therefore, the court construes the aforementioned paragraphs of the Amended Complaint to allege that the inventions described in the '729, '137, and '242 patents were *used by or for the Government*, "without [a] license" or "lawful right" to do so. *See* 28 U.S.C. § 1498(a).

The Amended Complaint, however, also alleges that Insitu and Boeing have directly infringed AATI's patents by "supplying or causing to be supplied in or from the United States all or a substantial portion of . . . the components of the invention claimed in the '729 patent, where such components are uncombined in whole or in part, in such a manner as to actively and intentionally induce the combination of such components outside of the United States in a manner that it knew or knows would infringe the '729 patent[,] if such combination occurred within the United States." Am. Compl. ¶ 43; *see also id*. ¶¶ 44; ¶¶ 47–48 (same re: Boeing's actions re: '729 patent); *see also id*. ¶¶ 54–55 (same re: Insitu's actions re: '137 patent); *see also id*. ¶¶ 58–59 (same re: Boeing 's actions re: '137 patent); *see also id.* ¶¶ 65–66 (same re: Insitu's actions re: '242 patent); *see also id*. ¶¶ 69–70 (same re: Boeing's actions re: '242 patent). But, *Zoltek V* requires "use[] or manufacture[] by or for the United States." 672 F.3d at 1319. The mere allegation of exportation, without an allegation of use by the Government, does not implicate this court's jurisdiction under 28 U.S.C. § 1498(a). As such, the Amended Complaint does not allege either use or manufacture by or for the Government and the court does not have jurisdiction under 28 U.S.C. § 1498(a) to adjudicate claims of patent infringement between private parties.

---

[14] Therefore, Section 1498(c) is inapplicable as it provides: "The provisions of . . . section [§ 1498] shall not apply to any claim arising in a foreign country." 28 U.S.C. § 1498(c).

15

Therefore, ¶¶ 43–44, 47–48, 54–55, 58–59, 65–66, and 69–70 of the Amended Complaint as to Insitu and Boeing are dismissed, and Boeing is dismissed as a T-PD.[15]  Boeing, in its own capacity and as the parent of the wholly-owned subsidiary Insitu, however, may elect to intervene in this case.  If it decides to do so, any such motion must be filed for the court's consideration on or before November 15, 2013.  The court will convene a status conference with the parties on November 25, 2013, to set up a briefing schedule for claim construction.

## IV.   CONCLUSION.

For these reasons, the October 15, 2012 Motion to Dismiss by Third-Party Defendant The Boeing Company is granted and paragraphs 43–44, 47–48, 54–55, 58–59, 65–66, and 69–70 of the May 10, 2012 Amended Complaint are dismissed, insofar as they allege a claim for patent infringement under Title 35.  Plaintiff, however, is granted leave to further amend to include factual aspects of these allegations as background information.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

---

[15] In the event that the Government is determined to be liable for patent infringement under 28 U.S.C. § 1498(a), it may seek to enforce any indemnification agreement it may have with Boeing in a separate action in federal district court.  Whether AATI may seek a separate adjudication against Boeing and the quantum of damages, if any, also is subject to the jurisdiction of a federal district court.