# In the United States Court of Federal Claims

No. 12-85 C
Filed: November 30, 2016

*******************************************
\*

ADVANCED AEROSPACE
TECHNOLOGIES, INC.,

     Plaintiff,

v.

THE UNITED STATES,

     Defendant,

and

THE BOEING COMPANY,

and

INSITU, INC.,

     Third-Party Defendants.

*******************************************

28 U.S.C. § 1498(a) (Jurisdiction
   Over Patent Claims Against The
   United States);
31 U.S.C. § 3727 (Assignment Of
   Claims Act);
35 U.S.C. § 120 (Benefit Of Earlier
   Filing Date In The United States);
35 U.S.C. § 202 (Disposition Of
   Rights);
41 U.S.C. § 7104(b)(4) (Contractor's
   Right Of Appeal From Decision
   By Contracting Officer);
Federal Acquisition Regulation
   52.227-11 (Patent Rights—
   Ownership By The Contractor);
RCFC 12(b)(1) (Subject Matter
   Jurisdiction).

**Craig S. King**, Arent Fox LLP, Washington, D.C., Counsel for Plaintiff.

**David A. Foley, Jr.**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Scott M. McCaleb**, Wiley Rein, LLP, Washington, D.C., Counsel for Third-Party Defendants.

### MEMORANDUM OPINION AND ORDER DENYING THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**BRADEN**, *Judge*.

## I.   RELEVANT FACTS.[1]

In mid-1997, William Randall McDonnell undertook to develop a solution to problems with traditional systems of launching and recovering unmanned aerial vehicles ("UAV"). "[N]amely, that UAVs were being arrested using a net, and impact with the net damaged the UAVs." Pl. App'x at PA 2–3. Mr. McDonnell's solution "involved hanging a line and engaging the line with a wing and a hook" of a UAV. Pl. App'x at PA 2.

On October 19, 1997, Mr. McDonnell, and his "friend and colleague," Charlie Baker, "performed a [backyard] demonstration of [a] recovery system during which the UAV successfully engaged the vertical line" and was recovered. Pl. App'x at PA 4. In March 1999, other successful demonstrations were performed by Mr. McDonnell. Pl. App'x at PA 5–6.

On July 23, 1999, Mr. McDonnell filed U.S. Provisional Patent Application No. 60/145,286 ("the '286 patent application") that resulted in the issuance of five patents: U.S. Patent Nos. 6,874,729 ("the '729 patent"); 7,097,137 ("the '137 patent"); 8,167,242 ("the '242 patent"); 8,517,306 ("the '306 patent"); and 8,567,718 ("the '718 patent") (collectively "the AATI patents"). Am. Compl. ¶ 25. Each AATI patent bears the title: "Launch and Recovery System for Unmanned Aerial Vehicles." Am. Compl. at 1–2.

The '286 patent application discloses "methods and mechanisms required to launch and retrieve aircraft." Pl. App'x at PA 183. The '286 application also discloses a "propeller guard" and a "latching mechanism," but did not disclose a propeller guard mounted with a latching mechanism. Gov't App'x at GA 66; *see also* Pl. App'x at PA 190. On July 24, 2000, however, AATI filed a related Patent Cooperation Treaty Application, No. PCT/US00/20099 ("the PCT application)," that did disclose a propeller guard mounted with a latching mechanism. Gov't App'x at GA 296.

In the summer of 1999, Mr. McDonnell approached the United States Coast Guard ("Coast Guard") to market his "launch and recovery systems." Gov't App'x at GA 18–20 (3/4/16 McDonnell Dep.); *see also* Pl. App'x at PA 6. On November 5, 1999, AATI was awarded a contract by the Coast Guard to demonstrate the launch system (Contract No. N00178-00-M-0069) ("the Launch Contract"). Gov't App'x at GA 318–26; *see also* Pl. App'x at PA 6. On December 10, 1999, AATI submitted a proposal to the Coast Guard to demonstrate an "improved" recovery system. Gov't App'x at GA 106; *see also* Pl. App'x at PA 42–54.

On February 24, 2000, a successful demonstration of AATI's launch system took place at BAI Aerosystems, Inc.'s ("BAI") Ragged Island test facility. Gov't App'x at GA 129; *see also* Pl. App'x at PA 6.

On May 23, 2000, AATI informed the Coast Guard that "a patent has been filed for this launch and recovery approach." Gov't App'x at GA 89; *see also* Pl. App'x at PA 8. Nevertheless, on June 28, 2000, the Coast Guard entered into Contract No. N00178-00-M-9014 ("the Recovery

---

[1] The relevant facts recited herein are derived from: the December 11, 2013 Third Amended Complaint ("Am. Compl."); the Government's Appendix to the April 11, 2016 Motion To Dismiss For Lack of Jurisdiction ("Gov't App'x"); and the Plaintiff's Appendix to the June 2, 2016 Opposition To Motion To Dismiss ("Pl. App'x").

Contract") with AATI, that required AATI to perform ten demonstrations of an "improved" recovery system. Pl. App'x at PA 8–9.  In turn, Mr. McDonnell was paid $45,000 by the United States Navy, on behalf of the Coast Guard. Gov't App'x at GA 31–32.  Of that amount, $6,000 was designated for the design, fabrication, and installation of a propeller guard mounted with a latching mechanism.  Gov't App'x at GA 31–32.  The Recovery Contract, however, did not incorporate or reference Federal Acquisition Regulation § 52.227-11 or contain a "Patent Rights clause."[2]  Gov't App'x at GA 29–30.

On October 13, 2000, prior to demonstrating the "improved" recovery system for the Coast Guard, Mr. McDonnell successfully tested a recovery system having a propeller guard mounted with a latching mechanism at BAI's facilities in Easton, Maryland, using a BAI-owned Exdrone.[3] Pl. App'x at PA 85.

On October 23, 25, and 27, 2000, AATI demonstrated a recovery system having a propeller guard mounted with a latching mechanism for the Coast Guard. Pl. App'x at PA 8.  Although the Recovery Contract required ten demonstrations, the Coast Guard decided to cease demonstrations, because several UAVs were severely damaged during the demonstrations.  Pl. App'x at PA 8–9. Thereafter, a Coast Guard Commander prepared a draft report evaluating the demonstrations and provided it to Mr. McDonnell.  Pl. App'x at PA 95–110.  This report did not reference ownership of, or licensing rights to, the propeller guard mounted with a latching mechanism that was demonstrated by AATI to the Coast Guard.  Pl. App'x at PA 95–110.

More than fifteen years later, on March 29, 2016, a Contracting Officer for the Naval Surface Warfare Center Dahlgren Division ("NSWCDD") sent a letter to AATI demanding title to the "inventions disclosed in AATI's PCT/US/2009 Application; U.S. Patent Nos. 6,874,729; 7,097,137; 8,517,306; 8,167,242; 8,567,718; and 8,864,069; and U.S. Patent Application Serial No. 14/518,348," pursuant to 35 U.S.C. § 202[5] and Federal Acquisition Regulation  § 52.227-11. Gov't App'x at GA 228–33.

## II.    PROCEDURAL HISTORY.

On February 8, 2012, AATI filed a Complaint in the United States Court of Federal Claims alleging that Insitu, Inc. ("Insitu") and the Boeing Company ("Boeing")[6] infringed, with the Government's authorization and consent, the '729 and '137 patents, pursuant to 28 U.S.C. § 1498(a).  Am. Compl. at 1–2.

The procedural history of this case previously was discussed in the court's July 29, 2015 Memorandum Opinion And Order Construing Certain Claims Of United States Patent No. 6,874,729, United States Patent No. 7,097,137, United States Patent No. 8,167,242, United States Patent No. 8,517,306, And United States Patent No. 8,567,718. *See Advanced Aerospace Technologies, Inc. v. United States*, 122 Fed. Cl. 445, 449–52 (2015).  Therein, the court construed

---

[2] The relevant portions of FAR § 52.227-11 are provided in the attached Court Appendix.

[3] The Exdrone is an unmanned aerial vehicle manufactured by BAI.

[5] The relevant portions of 35 U.S.C. § 202 are provided in the attached Court Appendix.

[6] These parties are collectively referred to herein as "the Third-Party Defendants."

several potentially relevant terms. For example, "fixed hook" was construed to mean "a hook placed in a position remaining constant." *Id*. at 466. "Obstruction" was construed to mean "an object requiring added force to be moved." *Id*. at 470. And, "Sensor" was construed to mean "a device that responds to a stimulus (such as heat, light, sound, pressure, signals, magnetism, or a particular motion) and transmits a resulting impulse." *Id*. at 470, 480.

On November 24, 2015, the court issued a Memorandum Opinion And Order Ruling On Indefiniteness Asserted Regarding Certain Claim Terms In United States Patent No. 6,874,729, United States Patent No. 7,097,137, United States Patent No. 8,167,242, United States Patent No. 8,517,306. *See Advanced Aerospace Technologies, Inc. v. United States*, 124 Fed. Cl. 282, 290–308 (2015). Therein, the court made several potentially relevant rulings. For example, with respect to the '729 patent, the court determined that the term "sensor" was not indefinite, but that the terms "near the point of engagement" and "outboard portion" were indefinite. *Id*. at 290–94. With respect to the '137 patent, the court determined that the terms "reasonably secure," "smooth continuation," "substantially arrested," and "sufficient amount" were not indefinite. *Id.* at 295–98. With respect to '242 patent, the court determined that the term "the inflexible support structure being construed" was not indefinite, but that the term "inboard point" was indefinite. *Id.* at 299–300. With respect to the '306 patent, the court determined that the terms "elastic deformation," "absorbs most of the energy," "generally vertical," and "generally perpendicular" were not indefinite, but that the terms "outboard portion," "reliably and releasably attach," and "kept clear" were indefinite. *Id.* 303–08.

On December 4, 2015, the court convened a telephone status conference and issued a Scheduling Order requiring the Government and the Third-Party Defendants to submit an invalidity chart and non-infringement contentions by February 1, 2016 and set a trial on infringement to commence on April 18, 2016 and a trial on damages to commence on June 13, 2016. ECF No. 108.

On February 1, 2016, the Government and the Third-Party Defendants submitted Contentions Of Invalidity And Non-Infringement. ECF No. 109.

On February 9, 2016, the Government filed a Motion To Amend Pleadings, pursuant to Rule 15 of the Rules Of The United States Court Of Federal Claims ("RCFC"), to amend its December 20, 2013 Answer and plead an additional defense under the Assignment of Claims Act, 31 U.S.C § 3727. ECF No. 112.

On February 16, 2016, Plaintiff filed a Motion To Compel Discovery. ECF No. 116.

On February 22, 2016, the court convened a hearing to resolve outstanding discovery disputes. 2/22/16 TR 1–90. During the hearing, the Third-Party Defendants asserted that certain documents were subject to attorney-client privilege and the court ordered submission of these documents for *in camera* review. 2/22/16 TR 30–31. The court also granted-in-part and denied-in-part Plaintiff's February 16, 2016 Motion To Compel. 2/22/16 TR 34–35, 45–46, 49, 50–51, 59, 61–73.

On March 10, 2016, the court convened a telephone status conference in preparation for the upcoming trial, at which the Government informed the court that new information was identified that implicated the court's jurisdiction. ECF No. 135.

On March 11, 2016, the court issued a Memorandum Opinion And Order Ruling On Attorney-Client Privilege Documents, Suspending Discovery, And Canceling Pending Trial Dates. *See Advanced Aerospace Technologies, Inc., v. United States*, 125 Fed. Cl. 581 (2016). Therein, the court determined that, in light of the Government's March 10, 2016 representation that it intended to file a Motion To Dismiss, the court ordered the suspension of the production of all privileged documents, suspension of all pending discovery (including outstanding depositions), and canceled the infringement and damages trial dates. *Id.* at 586. In addition, the court denied the Government's February 9, 2016 Motion To Amend Pleadings, without prejudice, and ordered the Government to file a Motion To Dismiss by April 11, 2016. *Id.* at 586.[7]

On April 11, 2016, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to RCFC 12(b)(1). On June 2, 2016, AATI filed a Response ("Pl. Resp."). On August 1, 2016, the Government filed a Reply ("Gov't Reply").

On September 6, 2016, AATI filed a Motion For Leave to file additional declarations in response to the Government's April 11, 2016 Motion To Dismiss. ECF No. 142. These declarations were attached to AATI's June 2, 2016 Response, but did not include the attestation clause required by 28 U.S.C. § 1746.[8] ECF No. 142. On September 23, 2016, the Government filed a Response stating that it was not opposed to AATI's motion. ECF No. 143. On October 13, 2016, the court issued an order granting AATI leave to file the additional declarations. ECF No. 144.

On November 16, 2016, the court convened an oral argument on the Government's April 11, 2016 Motion To Dismiss. 11/16/16 TR 1–88.

On November 18, 2016 AATI provided the court and the Government with copies of a video depicting Mr. McDonnell's October 19, 1997 and March 1999 demonstrations of the recovery system.

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction to adjudicate claims that allege "an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same . . . [seeking] recovery of . . . reasonable and entire compensation for such use and manufacture." 28 U.S.C. § 1498(a).

---

[7] The court also ruled that certain Third-Party Defendant documents requested by Plaintiff were subject to the attorney-client privilege. *See Advanced Aerospace*, 125 Fed. Cl. at 581–586.

[8] 28 U.S.C. § 1746 provides that sworn declarations should include an attestation in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." 28 U.S.C. § 1746(2).

As a threshold matter, the court must consider jurisdiction before reaching the substantive merits of a case.  *See Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.").  When considering a motion to dismiss for lack of subject matter jurisdiction, the court must take the facts alleged in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  The court may consider evidence beyond the pleadings, however, when the motion to dismiss challenges the jurisdictional facts alleged in the complaint. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999).  If the court determines that it does not have subject-matter jurisdiction, the court must dismiss the complaint.  *See* RCFC 12(b)(1).

**B.      Standard of Review.**

The Government's April 11, 2016 Motion To Dismiss challenges the court's jurisdiction, pursuant to Rule 12(b)(1).  A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject matter jurisdiction").  When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

The plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction.  *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("[The plaintiff] must allege in his pleading the facts essential to show jurisdiction."); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ([The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").  Therefore, the plaintiff cannot rely solely on allegations in the complaint, but also must bring forth relevant, adequate proof to establish jurisdiction.  *See Reynolds*, 846 F.3d at 748 ("[I]t was incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction.").

**C.      Whether The Court Has Jurisdiction To Adjudicate The Claims Alleged In The December 11, 2013 Third Amended Complaint.**

**1.      The Government's Argument.**

In relevant part, Section 1498(a) provides that:

This section shall not confer a right of action on any patentee or any assignee of such patentee with respect to any invention *discovered or invented by a person while in the employment or service of the United States*, where the invention was related to the official functions of the employee, in cases in which such functions

included research and development, or in the making of which Government time, materials or facilities were used.

28 U.S.C. § 1498(a) (emphasis added).

The Government argues that the "employment or service" exception to Section 1498(a) is a "limitation on the United States' waiver of sovereign immunity." Gov't Mot. at 12–13. The words "employment or service" require that: the invention was made "(1) while in the 'employment or service' of the United States and (2)(a) as part of the official functions of the employee or (b) in whose preparation government 'time, material[s], or facilities' were used." Gov't Mot. at 14 (quoting *Walton v. United States*, 551 F.3d 1367, 1369 (Fed. Cir. 2009)). Consequently, "the only question that must be answered is whether Mr. McDonnell's work under the Recovery Contract was 'in the employment or service of the United States.'" Gov't Mot. at 14 (quoting 28 U.S.C. § 1498(a)).

The Government adds that the "invention" at issue is the PCT application *"as a whole,"* although only portions of that application describe a propeller guard mounted with a latching mechanism and were "discovered or invented" during performance of the Recovery Contract. Gov't Mot. at 14, 32–34. In addition, the filing date of the '286 application is inapplicable, because only the actual reduction to practice is relevant in establishing whether Mr. McDonnell's inventions were "discovered or invented" during performance of the Recovery Contract. 11/16/16 TR 82.

Therefore, after reviewing the "the plain statutory language, the legislative history, and the case law," the Government concludes that Mr. McDonnell was "in the . . . service of the United States," because "AATI's and Mr. McDonnell's work was overseen by the Coast Guard, and AATI was paid for the work by the United States." Gov't Mot. at 18–19. In addition, Government "time, material[s], or facilities" were used, as Mr. McDonnell admitted, *i.e.*, "the drones used for the Coast Guard research were 'government property.'" Gov't Mot. at 14 (citing 3/4/16 McDonnell Dep.). Therefore, "the [c]ourt must find that sovereign immunity has not been waived under 28 U.S.C. § 1498(a) and that the [c]ourt lacks jurisdiction to hear plaintiff's claims." Gov't Mot. at 20.

Finally, the NSWCDD Contracting Officer's March 29, 2016 Letter demanding title to the asserted patents, pursuant to 35 U.S.C. § 202 and Federal Acquisition Regulation 52.227-11, "will void AATI's title in the asserted patents if it becomes final." Gov't Mot. at 20. "If title is voided, AATI will lack standing to assert a patent infringement claim." Gov't Mot. at 20. For this reason, the court should stay further proceedings in this case until the Contracting Officer decides whether to void AATI's title to the patents-in-suit. Gov't Mot. at 20.

## 2.     Plaintiff's Response.

AATI responds that "there is no merit to the Government's effort to lump together as a single 'invention' the 'net' recovery system and the recovery system at issue here." Pl. Resp. at 3. And, there is "no basis in law to combine the two recovery systems together as a 'single invention.'" Pl. Resp. at 3. Instead, "each claim under a patent is considered a separate 'invention' for the purposes of examining jurisdiction under 28 U.S.C. § 1498." Pl. Resp. at 19.

In addition, none of the "inventions" described in the asserted claims were "'discovered or invented' by a person while in the employment or service of the United States." Pl. Resp. at 19. As the Government admits, "the [Recovery] contract involved only a 'drone recovery using a parasail and a propeller guard with latch on the guard.'" Pl. Resp. at 21. Mr. McDonnell, however, "'discovered or invented' none of the fourteen inventions at issue (or any other inventions) during the period of time [that] the [G]overnment contends he was in the employment or service of the Government." Pl. Resp. at 2.

Finally, the court should not stay this case pending the Contracting Officer's final decision, because that decision will not be binding on the court. *Id*. at 39–40.

### 3.    The Government's Reply.

The Government replies that "AATI's opposition to the motion to dismiss boils down to a single issue—what is an 'invention' for purposes of the jurisdictional limitations on Section 1498(a)?" Gov't Reply at 1. In this case, there is a "'close and umbilical relationship' between the Coast Guard device and the asserted claims." Gov't Reply at 4 (citing *Technical Dev. Corp. v. United States*, 597 F.2d 733 (Ct. Cl. 1979)). And, "the plain statutory language, the legislative history, case law, and the asserted patents demonstrate that, because AATI was in the service of the Government when it reduced to practice the basic concept underlying the asserted patents, the court does not have jurisdiction to adjudicate AATI's claims that the Government infringed the patents at issue." Gov't Reply at 1.

In addition, the Government argues that the court has jurisdiction to adjudicate a Contracting Officer's decision, only if the decision is final. Gov't Reply at 20 ("[T]he standard of review does not give [the court] leave to ignore the tried-and-true jurisdictional prerequisite of a final decision."). Proceeding to trial before the decision is final "risks wasting resources by forcing the parties to litigate patents that the government might ultimately own." Gov't Reply at 20. For these reasons, the court should stay the case pending the Contracting Officer's final decision. Gov't Reply at 20.

### 4.    The Court's Resolution.

The United States Court of Federal Claims has jurisdiction to adjudicate patent infringement claims against the United States. *See* 28 U.S.C. § 1498 (2006). Section 1498(a) provides:

> Whenever an *invention* described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a) (emphasis added).

It is well settled that "*each claim* of a patent is a separate and distinct *invention*." *See Gould, Inc. v. United States*, 579 F.2d 571, 576 (Ct. Cl. 1978) ("It is also important to keep in mind

that each claim of a patent is a separate and distinct invention. It is thus possible to discuss and deal with one or more of the claims independently and distinctly from the entire group of patent claims."). As such, the court's jurisdiction under Section 1498(a) must be evaluated in light of the scope of each asserted claim individually.[9] *Id.* The claims asserted as infringed in this litigation are directed either to a generic "recovery system"[10] or a recovery system requiring a wing mounted with a latching mechanism.[11] No asserted claim, however, describes a propeller guard mounted with a latching mechanism. Simply put, this case concerns alleged infringement of claims about an apple, but the Government's argument is that the court does not have jurisdiction to adjudicate infringement claims about an orange.

In addition, in this case, each of the asserted claims is recited in a patent that claims priority to the '286 patent application. Am. Compl. at 29, 66, 103 and 171. The '286 patent application describes "methods and mechanisms required to launch and retrieve aircraft." Pl. App. at PA 183. Among other embodiments, the '286 patent application describes a recovery system in which the wing of a UAV is mounted with a latching mechanism (*i.e.*, hook 26 and spring loaded latch 28). Pl. App. at PA 190, 200. In light of disclosure of the '286 patent application and scope of the subject matter of the asserted claims, without a finding to the contrary, the asserted claims are entitled to the filing date of the '286 patent application (July 23, 1999). *See* 35 U.S.C. § 120.[12]

The parties agree that Mr. McDonnell filed the '286 patent application before signing either the Launch Contract or the Recovery Contract. Am. Compl. at 1; *see also* Gov't Mot. at 3–5. Therefore, the asserted claims are entitled to a July 23, 1999 filing date that predates both the November 5, 1999 Launch Contract and the June 28, 2000 Recovery Contract. And, the Court of Claims has held that, when claims are entitled to a filing date that predates Government "employment or service," "subsequent employment history is irrelevant and the bar expressed in 28 U.S.C. § 1498 is inapplicable." *See Leesona Corp. v. U.S.*, 530 F.2d 896, 903 (Ct. Cl. 1976) ("[The Government's] contention that 28 U.S.C. § 1498 bars this suit, because Dr. Tanner was an employee of the United States at the time he executed the continuation-in-part application is without merit. Dr. Tanner was neither employed by nor in the service of defendant either when the invention of claims 4 and 7 was made in 1958 or when the original application was filed in 1960. Since the claims are entitled to the 1960 filing date, his subsequent employment history is irrelevant and the bar expressed in 28 U.S.C. § 1498 is inapplicable."). In this case, since the '286

---

[9] Plaintiff asserts that the following claims were infringed: claim 45 of the '729 patent; claims 1, 2, 18, 25 and 30 of the '137 patent; claims 2, 13, 15 and 19 of the '242 patent; and claims 2, 3, 4 and 5 of the '718 patent against the Government. Pl. Resp. at 20.

[10] *See*, *e.g.*, claim 45 of the '729 patent (Am. Compl. Ex. A at 63); and claim 2 of the '242 patent, (Am. Compl. Ex. C. at 134).

[11] *See*, *e.g.*, claim 30 of the '137 patent that recites "wherein the device adapted for intercepting the line comprises a hook on the wing of the flying object." Am. Compl. Ex. B. at 98–99; *see also* claims 1, 2, 18 and 25 of the '137 patent (Am. Compl. Ex. B. at 98); claims 13, 15 and 19 of the '242 patent (Am. Compl. Ex. C. at 135); and claims 2, 3, 4 and 5 of the '718 patent (Am. Compl. Ex. E. at 202).

[12] The relevant portions of 35 U.S.C. § 120 are provided in the attached Court Appendix.

patent application predates both the Launch Contract and the Recovery Contract the "employment or service" bar of Section 1498(a) is inapplicable.

Nevertheless, the Government insists that the filing date of the '286 patent application is irrelevant. In *Pilley v. United States*, 74 Fed. Cl. 489 (2006), the Government made similar contentions, arguing "that while constructive reduction to practice by the filing of a patent application may be relevant for the purpose of determining priority of invention, filing a patent application is immaterial to determination of the time of first actual reduction to practice of an invention under the patent rights clause." *Id.* at 497–98 (citing *Hazeltine Corp. v. United States*, 820 F.2d 1190, 1196 (Fed. Cir. 1987). The *Pilley* court also determined that, "*[i]n the context of a patent rights clause in a government contract*, 'reduction to practice occurs when it is established that the invention will perform its intended function beyond a probability of failure,' so that whatever 'minor adjustments' are thereafter required may be considered mere 'perfecting modifications.'" *Id.* (emphasis added).

In *Pilley*, however, the government contract at issue "incorporate[d] by reference FAR § 52.227–11." *Id.* at 494–95. As such, the court limited its holding to "the context of a patent rights clause in a government contract." *Id.* at 497–98 (quoting *Hazeltine Corp.*, 820 F.2d at 1196). This is consistent with *Hazeltine Corp.*, where the United States Court of Appeals for the Federal Circuit's decision was based on the fact that the government contract at issue included a "Patent Rights clause" so the holding was limited to "the context of a patent rights clause in a government contract." *Hazeltine Corp.* 820 F.2d at 1196. In this case, however, neither the Launch Contract nor the Recovery Contract incorporated FAR 52.227-11 or otherwise included a "Patent Rights clause."[13] Consequently, *Pilley* and *Hazeltine Corp*. do not apply in this case. Moreover, the Government's interactions with Mr. McDonnell prior to, during and after performance of the Recovery Contract show that the Government had absolutely no interest in pursuing any patent rights in Mr. McDonnell's inventions. Pl. App'x at PA12, PA86, PA95, PA123.

Nevertheless, even if FAR 52.227-11 were to apply, the court finds, for purposes of this motion, that Mr. McDonnell actually reduced to practice the inventions disclosed in the asserted claims on October 19, 1997,[14] before entering into either the November 5, 1999 Launch Contract

---

[13] The Government's motion concerns only the reduction to practice during performance under the Recovery Contract. Gov't Mot. at 14, 32–34. The Launch Contract, however, also did not concern a propeller guard mounted with a latching mechanism and did not incorporate by reference FAR 52.227-11. Gov't App'x at GA 320-323.

[14] During the November 16, 2016 oral argument, AATI stated that there was video evidence of the October 19, 1997 reduction to practice. 11/16/16 TR 53–54. A review of the video shows a "subscale" UAV with a wing mounted with a latching mechanism being successfully recovered. This demonstration shows an actual reduction to practice of a UAV recovery system consistent with the asserted claims.

At the oral argument, the Government also asserted that the video does not show actual reduction to practice, because the UAV used was a "toy," *i.e.*, subscale, and not a full sized military drone. TR 76–81. The asserted claims, however, recite a "flying object," an "aircraft" and an "unmanned aircraft," not any specific type of UAV. *See* Claim 45 of the '729 patent (Am. Compl. Ex. A at 63); claims 1, 2, 18, 25 and 30 of the '137 patent (Am. Compl. Ex. B. at 98-99); claims

or the June 28, 2000 Recovery Contract.  Pl. App'x at PA 56.  As such, AATI has put forth sufficient evidence to establish the court's jurisdiction in this case.

The Government's reliance on the "close and umbilical connection" doctrine also does not alter the court's conclusion.  Under that doctrine, the federal government has the right to use, royalty-free, "those inventions which have a 'close [and] umbilical relationship' to the work and research funded by the United States and were crystallized during performance of the federal contract." *Technical Dev. Corp. v. United States*, 597 F.2d 733, 745–46 (Ct. Cl. 1979) (citing *Technitrol, Inc. v. United States*, 440 F.2d 1362, 1372 (Ct. Cl. 1971)).  In *Technical Dev. Corp.*, however, the Court of Claims held that the inventions at issue were conceived of or reduced to practice during Government "employment or service." *Id.* at 749–50.  In this case, as discussed above, the "inventions" at issue were conceived of and reduced to practice by October 19, 1997, prior to both the Launch Contract (November 5, 1999) and the Recovery Contract (June 28, 2000).

In addition, although Mr. McDonnell's performance under the Launch Contract and the Recovery Contract necessarily required use of technologies disclosed in the '286 application, the Government "contributed nothing at all to that development." *See Leesona Corp.*, 530 F.2d at 903.  In *Technitrol, Inc.*, the Court of Claims considered this issue "by asking what the United States (acting for its taxpayers) can fairly be said to have purchased through its sponsorship of the contract project." *Technitrol, Inc.*, 440 F. 2d at 1372.  In this case, Mr. McDonnell's work prior to the Launch Contract and the Recovery Contract was privately funded.  11/16/16 TR 64.  Therefore, it cannot "fairly be said" that the Government "purchased" the "inventions" disclosed in the '286 application.  Nor can it be said that the public "[h]aving borne the expense" of Mr. McDonnell's efforts, "is entitled to enjoy the fruits without further charge." *See Technitrol, Inc.* 440 F. 2d at 1372.  Even assuming that Mr. McDonnell was in the "service of the United States," the Government proffered no evidence that establishes that the wing mounted with a latching mechanism was "discovered or invented . . . while [he was] in the . . . service of the United States," as required by Section 1498(a). *See Technical Development Corp.*, 597 F.2d at 746.

Finally, 41 U.S.C. § 7104(b)(1) provides that "in lieu of appealing the decision of a contracting officer . . . to an agency board, *a contractor may bring an action directly on the claim in the United States Court of Federal Claims*, notwithstanding any contract provision, regulation, or rule of law to the contrary." 41 U.S.C. § 7104(b)(1) (emphasis added).  In light of the non-deferential standard of review and congressional authorization of the United States Court of Federal Claims to adjudicate AATI's patent infringement claims, the court declines to exercise its discretion to stay these proceedings again.

## IV.    CONCLUSION.

For the reasons discussed herein, the Government's April 11, 2016 Motion To Dismiss is denied.

---

2, 13, 15 and 19 of the '242 patent (Am. Compl. Ex. C. at 135); and claims 2, 3, 4 and 5 of the '718 patent (Am. Compl. Ex. E. at 202).  Therefore, the fact that a military UAV was not used in reducing Mr. McDonnell's invention to practice is not relevant or dispositive.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

**COURT APPENDIX:**
**RELEVANT STATUTORY AND REGULATORY PROVISIONS**

Section 120 of the 1952 Patent Act, as amended by the Patent Law Treaties Implementation Act of 2012, provides:

> An application for patent for an invention disclosed in the manner provided by section 112(a) (other than the requirement to disclose the best mode) in an application previously filed in the United States, or as provided by section 363 or 385, which names an inventor or joint inventor in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application. No application shall be entitled to the benefit of an earlier filed application under this section unless an amendment containing the specific reference to the earlier filed application is submitted at such time during the pendency of the application as required by the Director.  The Director may consider the failure to submit such an amendment within that time period as a waiver of any benefit under this section.  The Director may establish procedures, including the requirement for payment of the fee specified in section 41(a)(7), to accept an unintentionally delayed submission of an amendment under this section.

35 U.S.C. § 120.

---

Section 202 of the 1980 Act To Amend The Patent And Trademark Laws, as subsequently amended, provides, in relevant part:

> (a) Each nonprofit organization or small business firm may, within a reasonable time after disclosure as required by paragraph (c)(1) of this section, elect to retain title to any subject invention: Provided, however, That a funding agreement may provide otherwise (i) when the contractor is not located in the United States or does not have a place of business located in the United States or is subject to the control of a foreign government, (ii) in exceptional circumstances when it is determined by the agency that restriction or elimination of the right to retain title to any subject invention will better promote the policy and objectives of this chapter (iii) when it is determined by a Government authority which is authorized by statute or Executive order to conduct foreign intelligence or counter-intelligence activities that the restriction or elimination of the right to retain title to any subject invention is necessary to protect the security of such activities or, (iv) when the funding agreement includes the operation of a Government-owned, contractor-operated facility of the Department of Energy primarily dedicated to that Department's naval nuclear propulsion or weapons related programs and all funding agreement limitations under this subparagraph on the contractor's right to elect title to a subject invention are limited to inventions occurring under the above two programs of the Department of Energy. The rights of the

nonprofit organization or small business firm shall be subject to the provisions of paragraph (c) of this section and the other provisions of this chapter.

(b)

(1) The rights of the Government under subsection (a) shall not be exercised by a Federal agency unless it first determines that at least one of the conditions identified in clauses (i) through (iv) of subsection (a) exists. Except in the case of subsection (a)(iii), the agency shall file with the Secretary of Commerce, within thirty days after the award of the applicable funding agreement, a copy of such determination. In the case of a determination under subsection (a)(ii), the statement shall include an analysis justifying the determination. In the case of determinations applicable to funding agreements with small business firms, copies shall also be sent to the Chief Counsel for Advocacy of the Small Business Administration. If the Secretary of Commerce believes that any individual determination or pattern of determinations is contrary to the policies and objectives of this chapter or otherwise not in conformance with this chapter, the Secretary shall so advise the head of the agency concerned and the Administrator of the Office of Federal Procurement Policy, and recommend corrective actions.

(2) Whenever the Administrator of the Office of Federal Procurement Policy has determined that one or more Federal agencies are utilizing the authority of clause (i) or (ii) of subsection (a) of this section in a manner that is contrary to the policies and objectives of this chapter, the Administrator is authorized to issue regulations describing classes of situations in which agencies may not exercise the authorities of those clauses.

(3) If the contractor believes that a determination is contrary to the policies and objectives of this chapter or constitutes an abuse of discretion by the agency, the determination shall be subject to section 203(b).

(c) Each funding agreement with a small business firm or nonprofit organization shall contain appropriate provisions to effectuate the following:

(1) That the contractor disclose each subject invention to the Federal agency within a reasonable time after it becomes known to contractor personnel responsible for the administration of patent matters, and that the Federal Government may receive title to any subject invention not disclosed to it within such time.

(2) That the contractor make a written election within two years after disclosure to the Federal agency (or such additional time as may be approved by the Federal agency) whether the contractor will retain title to a subject invention: Provided, That in any case where the 1-year period referred to in section 102(b) would end before the end of that 2-year period, the period for election may be shortened by the Federal agency to a date that is not more than sixty days before the end of that 1-year period: And provided further, That the Federal Government may receive title to any subject invention in which the contractor does not elect to retain rights or fails to elect rights within such times.

(3) That a contractor electing rights in a subject invention agrees to file a patent application prior to the expiration of the 1-year period referred to in section 102(b), and

shall thereafter file corresponding patent applications in other countries in which it wishes to retain title within reasonable times, and that the Federal Government may receive title to any subject inventions in the United States or other countries in which the contractor has not filed patent applications on the subject invention within such times.

(4) With respect to any invention in which the contractor elects rights, the Federal agency shall have a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States any subject invention throughout the world: Provided, That the funding agreement may provide for such additional rights, including the right to assign or have assigned foreign patent rights in the subject invention, as are determined by the agency as necessary for meeting the obligations of the United States under any treaty, international agreement, arrangement of cooperation, memorandum of understanding, or similar arrangement, including military agreement relating to weapons development and production.

(5) The right of the Federal agency to require periodic reporting on the utilization or efforts at obtaining utilization that are being made by the contractor or his licensees or assignees: Provided, That any such information as well as any information on utilization or efforts at obtaining utilization obtained as part of a proceeding under section 203 of this chapter shall be treated by the Federal agency as commercial and financial information obtained from a person and privileged and confidential and not subject to disclosure under section 552 of title 5.

(6) An obligation on the part of the contractor, in the event a United States patent application is filed by or on its behalf or by any assignee of the contractor, to include within the specification of such application and any patent issuing thereon, a statement specifying that the invention was made with Government support and that the Government has certain rights in the invention.

(7) In the case of a nonprofit organization, (A) a prohibition upon the assignment of rights to a subject invention in the United States without the approval of the Federal agency, except where such assignment is made to an organization which has as one of its primary functions the management of inventions (provided that such assignee shall be subject to the same provisions as the contractor); (B) a requirement that the contractor share royalties with the inventor; (C) except with respect to a funding agreement for the operation of a Government-owned-contractor-operated facility, a requirement that the balance of any royalties or income earned by the contractor with respect to subject inventions, after payment of expenses (including payments to inventors) incidental to the administration of subject inventions, be utilized for the support of scientific research or education; (D) a requirement that, except where it is determined to be infeasible following a reasonable inquiry, a preference in the licensing of subject inventions shall be given to small business firms; and (E) with respect to a funding agreement for the operation of a Government-owned-contractor-operated facility, requirements (i) that after payment of patenting costs, licensing costs, payments to inventors, and other expenses incidental to the administration of subject inventions, 100 percent of the balance of any royalties or income earned and retained by the contractor during any fiscal year up to an amount equal to 5 percent of the annual budget of the facility, shall be used by

the contractor for scientific research, development, and education consistent with the research and development mission and objectives of the facility, including activities that increase the licensing potential of other inventions of the facility; provided that if said balance exceeds 5 percent of the annual budget of the facility, that 15 percent of such excess shall be paid to the Treasury of the United States and the remaining 85 percent shall be used for the same purposes described above in this clause; and (ii) that, to the extent it provides the most effective technology transfer, the licensing of subject inventions shall be administered by contractor employees on location at the facility.

(8) The requirements of sections 203 and 204 of this chapter.

35 U.S.C. § 202(a)–(c).

---

FAR 52.227-11 provides in relevant part:

(a) As used in this clause—

Invention means any invention or discovery that is or may be patentable or otherwise protectable under title 35 of the U.S. Code, or any variety of plant that is or may be protectable under the Plant Variety Protection Act (7 U.S.C. 2321, et seq.)

Made means—

(1) When used in relation to any invention other than a plant variety, the conception or first actual reduction to practice of the invention.

\*       \*       \*

Subject invention means any invention of the Contractor made in the performance of work under this contract.

(b) Contractor's rights

(1) Ownership. The Contractor may retain ownership of each subject invention throughout the world in accordance with the provisions of this clause.

(2) License.

(i) The Contractor shall retain a nonexclusive royalty-free license throughout the world in each subject invention to which the Government obtains title, unless the Contractor fails to disclose the invention within the times specified in paragraph (c) of this clause. The Contractor's license extends to any domestic subsidiaries and affiliates within the corporate structure of which the Contractor is a part, and includes the right to grant sublicenses to the extent the Contractor was legally obligated to do so at contract award. The license is transferable only with the written approval of the agency,

iv

except when transferred to the successor of that part of the Contractor's business to which the invention pertains.

(ii) The Contractor's license may be revoked or modified by the agency to the extent necessary to achieve expeditious practical application of the subject invention in a particular country in accordance with the procedures in FAR 27.302(i)(2) and 27.304–1(f).

(c)  Contractor's obligations.

(1) The Contractor shall disclose in writing each subject invention to the Contracting Officer within 2 months after the inventor discloses it in writing to Contractor personnel responsible for patent matters. The disclosure shall identify the inventor(s) and this contract under which the subject invention was made. It shall be sufficiently complete in technical detail to convey a clear understanding of the subject invention. The disclosure shall also identify any publication, on sale (i.e., sale or offer for sale), or public use of the subject invention, or whether a manuscript describing the subject invention has been submitted for publication and, if so, whether it has been accepted for publication. In addition, after disclosure to the agency, the Contractor shall promptly notify the Contracting Officer of the acceptance of any manuscript describing the subject invention for publication and any on sale or public use.

(2) The Contractor shall elect in writing whether or not to retain ownership of any subject invention by notifying the Contracting Officer within 2 years of disclosure to the agency. However, in any case where publication, on sale, or public use has initiated the 1–year statutory period during which valid patent protection can be obtained in the United States, the period for election of title may be shortened by the agency to a date that is no more than 60 days prior to the end of the statutory period.

(3) The Contractor shall file either a provisional or a nonprovisional patent application or a Plant Variety Protection Application on an elected subject invention within 1 year after election. However, in any case where a publication, on sale, or public use has initiated the 1–year statutory period during which valid patent protection can be obtained in the United States, the Contractor shall file the application prior to the end of that statutory period. If the Contractor files a provisional application, it shall file a nonprovisional application within 10 months of the filing of the provisional application. The Contractor shall file patent applications in additional countries or international patent offices within either 10 months of the first filed patent application (whether provisional or nonprovisional) or 6 months from the date permission is granted by the Commissioner of Patents to file foreign patent applications where such filing has been prohibited by a Secrecy Order.

(4) The Contractor may request extensions of time for disclosure, election, or filing under paragraphs (c)(1), (c)(2), and (c)(3) of this clause.

(d)  Government's rights—

(1) Ownership. The Contractor shall assign to the agency, on written request, title to any

v

subject invention—

(i)  If the Contractor fails to disclose or elect ownership to the subject invention within the times specified in paragraph (c) of this clause, or elects not to retain ownership; provided, that the agency may request title only within 60 days after learning of the Contractor's failure to disclose or elect within the specified times.

(ii) In those countries in which the Contractor fails to file patent applications within the times specified in paragraph (c) of this clause; provided, however, that if the Contractor has filed a patent application in a country after the times specified in paragraph (c) of this clause, but prior to its receipt of the written request of the agency, the Contractor shall continue to retain ownership in that country.

(iii) In any country in which the Contractor decides not to continue the prosecution of any application for, to pay the maintenance fees on, or defend in reexamination or opposition proceeding on, a patent on a subject invention.

(2) License. If the Contractor retains ownership of any subject invention, the Government shall have a nonexclusive, nontransferable, irrevocable, paid-up license to practice, or have practiced for or on its behalf, the subject invention throughout the world.

48 C.F.R. § 52.227-11(a)–(d).